IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAYLER COBBS, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) No. 03 C 3841 ) |
| MICHAEL F. SHEAHAN, in his official capacity as Sheriff of Cook County, Illinois, et al., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gayler Cobbs brought this action against defendants alleging that they unlawfully retaliated against her when she refused to support defendant Michael Sheahan's re-election campaign for Cook County Sheriff, in violation of her First Amendment rights and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Defendants seek to dismiss plaintiff's action, arguing that she fails to state a claim for relief. For the following reasons, defendants' motion is granted in part and denied in part.

## BACKGROUND

For purposes of defendants' motion to dismiss, the following facts are viewed in plaintiff's favor. Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Plaintiff began working for the Cook County Sheriff's Department in 1985, and rose through the ranks until July 11, 2001, when she was removed from her position as the assistant director of the boot camp program and assigned to the position of sergeant in the Department of Corrections. Plaintiff believes that she was demoted in retaliation for refusing to support defendant Citizens for Sheahan, defendant Sheahan's political campaign committee. She contends that sometime

in early 2001 defendant Patrick Durkin, director of the boot camp program, asked her to sell tickets for a fundraiser event, and that defendant Thomas Dourdy, superintendent of that program, asked her to buy fundraiser tickets, and that she refused both requests. After she told Dourdy that she does not buy tickets, Dourdy allegedly asked her, "where is your loyalty?" and told her that the incident would not reflect well on her record. Plaintiff then alleges that defendant James Ryan, director of operations at the sheriff's department, ordered her demotion.

Seeking relief from the allegedly unlawful demotion, plaintiff claimed that defendants violated section 1962(c) of RICO, her right to contract under 42 U.S.C. § 1981, and her First Amendment and equal protection rights under 42 U.S.C. § 1983. Defendants sought to dismiss all counts, and in our memorandum opinion and order dated April 14, 2004, we denied defendants' motion in its entirety (Cobbs v. Sheahan, 319 F. Supp. 2d 865 (N.D. Ill. 2004)). Plaintiff then amended her complaint, adding counts under §§ 1962(a) and (d) of RICO, and a count under 18 U.S.C. § 2 for aiding and abetting violations of §§ 1962(a) and (c). She also added class allegations, seeking to represent a class of employees at the sheriff's department who refused to contribute money or services to defendants and suffered negative consequences. Plaintiff's amended complaint does not include the right to contract and equal protection claims.

Defendants raise a host of arguments in support of their motion to dismiss the amended complaint. First, they argue that plaintiff lacks standing to bring the § 1962(a) claim because she never made any campaign contributions and her injury does not flow from defendants' investment of RICO income. They further contend that plaintiff fails to state a § 1962(c) claim because her injury was not caused by any predicate RICO activity. Defendants argue that

plaintiff has failed to show a pattern of racketeering activity sufficient to support her RICO charges. Next, they argue that there is no aiding and abetting liability for §§ 1962(a) and (c). Defendants also assert that plaintiff's failure to state claims under either § 1962(a) or (c) forecloses her § 1962(d) conspiracy claim. Finally, defendants claim that plaintiff fails to state a First Amendment retaliation claim.

## DISCUSSION

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint and not the merits of the case. General Electric Capital Corp v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997); Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). We accept plaintiff's factual allegations as true and draw all reasonable inferences in her favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S.163, 164 (1993); Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). A claim survives a motion to dismiss if "relief is possible under any set of facts that could be established consistent with the allegations" (Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992)), and is dismissed only if it appears beyond a doubt that there exist no facts to support the allegations. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The court concluded in its April 14, 2004, order that plaintiff stated a § 1962(c) claim, and denied defendants' arguments to the contrary. In addition to finding that plaintiff adequately alleged that defendants played roles in an enterprise, we noted that "the alleged demand for a political contribution in return for a patronage job" constituted extortion, which § 1961 lists as a predicate RICO act. Cobbs, 319 F. Supp. 2d at 869-70. We also rejected defendants' arguments to dismiss the First Amendment claim because there existed factual issues that exceeded the scope of the motion to dismiss. We review these points because

plaintiff strenuously argues that the law of the case doctrine bars defendants' arguments. Under the law of the case doctrine, "a ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it." Tice v. Am. Airlines, Inc., 373 F.3d 851, 853 (7th Cir. 2004); *see also* Payne v. Churchich, 161 F.3d 1030, 1037 n.8 (7th Cir. 1998). The doctrine is not the impenetrable barrier, as portrayed by plaintiff, with respect to the new arguments plaintiff has presented in her amended complaint. The doctrine prevents the reopening of issues decided earlier in the litigation (Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988)), but several issues regarding plaintiff's new claims are outstanding. *See* Roboserve, Inc. v. Kato Kagaku Co., 121 F.3d 1027, 1032 (7th Cir. 1997) ("Law of the case is limited insofar as it applies only to issues that were decided in the former proceeding but not to questions which might have been decided but were not."). We first turn to defendants' arguments against the § 1962(a) claim.

## Section 1962(a) Claim

Section 1962(a) makes it unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Defendants argue that plaintiff cannot raise the § 1962(a) claim because she neither bought nor sold campaign fundraiser tickets. They base that argument on the investment injury rule, which states that "the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate." Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 778 n.6 (7th Cir.

1994). *See also* <u>Vemco, Inc. v. Camardella</u>, 23 F.3d 129, 132 (6th Cir. 1994) ("to state a claim under § 1962(a), a plaintiff must plead a specific injury to the plaintiff caused by the investment of income into the racketeering enterprise, *distinct from* any injuries caused by the predicate acts of racketeering."). In response, plaintiff asserts that her refusal to join the enterprise led to her demotion and loss of money in the form of reduced salary. Plaintiff also highlights sections of the April 14, 2004, order in which the court found that plaintiff adequately alleged that defendants attempted to obtain money from her.

Initially, defendants' interpretation of § 1962(a) improperly narrows the scope of the statute because the fact that plaintiff refused to buy and sell fundraiser tickets does not preclude her from suing under that section. Section 1962(a) specifies that income used or invested by an enterprise must be derived from illegal racketeering activity or the collection of an unlawful debt. The statute is silent as to the source of the income, and it does not grant standing only to those who actually provide income to a RICO enterprise. Indeed, it is the civil remedies section of RICO that provides standing to "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Thus, standing to sue depends on the injury caused by an enterprise's use or investment of the income, and not by the plaintiff's investment of that income into a defendant's enterprise. It is true, as defendants emphasize, that in many cases arising under § 1962(a) the defendant dupes the plaintiff into investing money in the defendant's organization, but that common scenario is not invariably the case. *See, e.g.,* <u>Ideal Steel Supply Corp. v. Anza</u>, 373 F.3d 251 (2d Cir. 2004). Further illustrating why the injury and not the investment is key, is the fact that even when the plaintiff supplies the income no actionable § 1962(a) claim lies unless the plaintiff is injured as a result of the defendant's use of that income. Ultimately, defendants' construction of §

1962(a) finds no support in the plain language of the statute, and it also unnecessarily constricts scope of the statute. *See* Morgan v. Bank of Waukegan, 804 F.2d 970, 974 (7th Cir. 1986) (noting that the court of appeals "has consistently held that RICO must be given the broad effect mandated by its plain language.").

Having cleared the first hurdle set by defendants, plaintiff now faces a more formidable obstacle in the form of the investment injury rule. As discussed above, to state a § 1962(a) claim plaintiff must allege that her injury was caused by defendants' use or investment of income derived from racketeering activity, and she cannot merely claim harm caused by predicate racketeering acts. The Seventh Circuit has not adopted the investment injury rule, but, in Vicom, the court expressed accord with the majority of circuits that have adopted the rule.[1] *See* Vicom, 20 F.3d at 778 n.6. Following Vicom, district courts in the Seventh Circuit have applied the investment injury rule and have required the investment of income to cause a plaintiff's injuries. *See, e.g.*, Bd. of Trs. v. Nationwide Life Ins. Co., 2005 U.S. Dist. LEXIS 6159, *22, 2005 WL 711977 (N.D. Ill. 2005); Vega v. Contract Cleaning Maint., Inc., 2004 U.S. Dist. LEXIS 20949, *40-42, 2004 WL 2358274 (N.D. Ill. 2004); Carnegie v. Household Int'l, Inc., 220 F.R.D. 542, 546 (N.D. Ill. 2004) (stating that § 1962(a) "covers injuries which are caused by the use or investment of racketeering income"); Xinos v. Kappos, 270 F. Supp. 2d 1027, 1031 (N.D. Ill. 2003) ("a plaintiff bringing a claim under Section 1962(a) must allege that he was injured from the defendants' use or investment of income that they derived from racketeering activity"; Shapo v. O'Shaughnessy, 246 F. Supp. 2d 935, 965 (N.D. Ill. 2002) (collecting cases). Indeed, we have already accepted the rule (Pinski v. Adelman, 1995 U.S.

---

[1] Only the Fourth Circuit has declined to adopt the investment injury rule. *See* Potomac Elec. Power Co. v. Elec. Motor and Supply, Inc., 262 F.3d 260, 264 (4th Cir. 2001); Busby v. Crown Supply, Inc., 896 F.2d 833, 836-39 (4th Cir. 1990).

Dist. LEXIS 16550, *27-30, 1995 WL 669101, *8-9 (N.D. Ill. 1995)), and see no reason to change course.

Plaintiff fails to allege any injury caused by defendants' investment or use of income derived from racketeering activity. Plaintiff does state that she and the putative class members were injured by both defendants' predicate racketeering acts and their investment and reinvestment of income derived from those acts into the enterprise (plf. cplt. ¶93). That statement suggests a distinct investment injury, but plaintiff then submarines her § 1962(a) claim when she attributes her injury to the underlying predicate act of extortion, claiming that she was demoted "for failing to succumb to or comply with the demands of Sheahan's Political Enterprise, which constitute an illegal extortionate political campaign contribution scheme" (*id.* at ¶94). The alleged extortion is a predicate racketeering act, not a § 1962(a) injury. Moreover, plaintiff's contention that defendants used the investment income to support the enterprise does not establish standing because the mere reinvestment of racketeering proceeds into the enterprise does not create § 1962(a) standing. *See* Vicom, 20 F.3d at 779 n.6; Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1110 (9th Cir. 2003).

Plaintiff also argues that she has standing as a result of losing her salary, but that argument only reinforces the absence of a § 1962(a) claim. Plaintiff lost her salary due to her demotion, and she alleges that she was demoted because she refused to participate in defendants' alleged scheme. Plaintiff acknowledges that the predicate act (extortion), and not the investment of any income, caused her loss of salary.[2] Thus, plaintiff fails to allege how the

---

[2] Plaintiff similarly argues that standing is established by the court's finding that defendants have attempted to receive something of value from her, namely money. But the court made that observation in the context of plaintiff's § 1962(c) claim, and that finding is distinct from and cannot support the § 1962(a) claim. If plaintiff's allegation of one injury would suffice to support claims under §§ 1962(a) and (c), "then there is no real rationale for Congress having passed both." St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 443 (5th Cir. 2000).

investment of income harmed her, and instead admits that she was injured by the predicate act of extortion. Having failed to state any distinct investment injury, plaintiff's § 1962(a) claim is dismissed.

## Section 1962(c) Claim

Under § 1962(c) it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Under § 1964(c), plaintiff must show that she was demoted "by reason of" defendants' extortionate scheme. Defendants argue that the § 1962(c) claim must be dismissed because plaintiff fails to allege that her injury was caused by the predicate racketeering act of extortion. However, in the court's April 14, 2004, order, we found plaintiff's allegations of causation survived defendants' 12(b)(6) motion. Discussion of defendants' arguments reinforces that finding.

Defendants rely on Reddy v. Litton Indus., Inc., 912 F.2d 291, 294 (9th Cir. 1990), and in that case the defendant fired the plaintiff after he raised concerns about defendant's illegal activity (bribery to obtain lucrative foreign contracts). Plaintiff then brought a RICO action, citing the bribery as predicate racketeering activity. The court dismissed that action after concluding that plaintiff's termination was not caused by the bribery, which accords with the general rule that an employee who is terminated for refusing to participate in illegal activities may not sue under RICO, because the harm is not caused by the predicate acts but is, instead, caused by reason of the employee's refusal to participate in the activities. *See* Kramer v. Bachan Aerospace Corp., 912 F.2d 151, 154-55 (6th Cir. 1990); Hecht v. Commerce Clearing House, 897 F.2d 21, 22-24 (2d Cir. 1990). The general rule typically applies when the plaintiff

is a witness to the defendant's illegal activity and is then fired for reporting or complaining about the defendant's conduct.[3] In contrast, plaintiff was a target of defendant's illegal racketeering activity, and was allegedly demoted by reason of that activity, not because of any complaints made about that illegal conduct. The court has previously noted: "We read plaintiff's complaint as alleging that defendants explicitly condition employment decisions within the office on campaign contributions." Cobbs, 319 F. Supp. 2d at 871. Plaintiff has adequately alleged a causal link between the predicate act and her demotion, unlike Reddy, in which an intervening act stood between the predicate act and the injury. Further, because we interpret plaintiff to allege that her demotion was by reason of the extortionate scheme and not by an overt act in furtherance of that scheme, defendants' reliance on Beck v. Prupis, 529 U.S. 494 (2000), is misplaced.[4] Defendants' motion to dismiss the § 1962(c) claim is denied.

## Pattern of Racketeering Activity

Defendants also claim that plaintiff has failed to establish a pattern of racketeering activity. In the April 14, 2004, order the court concluded that plaintiff adequately alleged a pattern of racketeering activity based on the defendants' conditioning of employment decisions on political campaign contributions. Defendants do stress that plaintiff cannot establish a pattern by using another sheriff's department employee, Denis Micnerski, who apparently contributed money to defendants' enterprise and was subsequently demoted. However, it is

---

[3] Defendant quotes Reddy for the principle that an employee who is fired for refusing to participate in racketeering activity cannot sue under § 1962(c). See def. reply brief, 10 n.5. Reddy cites several cases (which defendant also quotes) that illustrate how the plaintiffs were discharged for reporting or complaining about illegal activity. The plaintiffs in these cases were not the targets of the defendants' illegal conduct. See, e.g., Burdick v. American Express Co., 865 F.2d 527, 528-29 (2d Cir. 1989); Nodine v. Textron, Inc., 819 F.2d 347, 348-49 (1st Cir. 1987); Morast v. Lance, 807 F.2d 926, 933 (11th Cir. 1987)).

[4] This conclusion does not endorse plaintiff's arguments, which rely on Schiffels v. Kemper Financial Servs., Inc., 978 F.2d 344 (7th Cir. 1992), and Shearin v. E.F. Hutton Group, 885 F.2d 1162, 1167-68 (3d Cir. 1989) – cases that represent a minority position rejected by Beck.

apparent that plaintiff uses class allegations – not reference to Micnerski or his case – to help establish a pattern of racketeering activity, and those allegations bolster plaintiff's complaint. As is the case with plaintiff's § 1962(c) claim, there is no need to revisit and revamp the court's prior conclusions on this matter.[5]

### Aiding and Abetting Under Sections 1962(a) and (c)

In Count II plaintiff alleges that defendants violated 18 U.S.C. § 2 by aiding and abetting violations of §§ 1962(a) and (c). Having dismissed plaintiff's § 1962(a) claim, the only remaining issue is whether plaintiff can state a claim for aiding and abetting a § 1962(c) violation. Defendants contend that plaintiff cannot state a claim, arguing that § 1962(c) does not provide for aiding and abetting liability, and that even if plaintiff could state a claim, she has failed to meet the applicable Rule 9(b) pleading standards. Without specifically addressing many of defendants' cases, plaintiff claims that she has adequately pled the elements of aiding and abetting.

Congress enacted 18 U.S.C. § 2 as a criminal aiding-and-abetting statute, and "has not enacted a general civil aiding and abetting statute – either for suits by the Government . . . or for suits by private parties." <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164, 182 (1994). Civil statutes that enable a private person to sue a private defendant for damages do not automatically yield a "general presumption that the plaintiff may also sue aiders and abettors." *Id.* Instead, a statute must specifically provide for aiding and abetting liability. *Id.* In <u>Central Bank</u>, the Court held that section 10(b) of the Securities Exchange Act did not provide for aiding and abetting liability, and it refused to imply a

---

[5]The court has already reviewed and rejected defendants' arguments. *Compare* def. brief in support of motion to dismiss, filed Jan. 1, 2005, pp. 7-10, *with* def. reply brief, filed Feb. 20, 2004, pp. 5-8.

private right of action. *Id.* at 191. The Court specifically noted that despite numerous decisions that recognized aiding and abetting liability in section 10(b) actions (*see, id.* at 192-93 n.1 (Stevens, J., dissenting)), the absence of the words "aid" and "abet" from the statutory text indicated that Congress did not intend to impose aiding and abetting liability. *Id.* at 176-77.

Many courts have applied the logic of <u>Central Bank</u> to RICO and concluded that § 1962(c) does not provide for aiding and abetting liability. *See, e.g.,* <u>Jubelirer v. Mastercard Int'l</u>, 68 F. Supp. 2d 1049, 1054 (W.D. Wis. 1999); <u>Touhy v. Northern Trust Bank</u>, 1999 U.S. Dist. LEXIS 7967, *8-9, 1999 WL 342700 (N.D. Ill. 1999) ("Thus, even though this court must construe RICO liberally . . . this court cannot ignore the clear indication by Congress in failing to reference 18 U.S.C. § 2 in the language of § 1962(c) as well); <u>Sorrano v. New York Life Ins. Co.</u>, 1999 U.S. Dist. LEXIS 1963, *21-24, 1999 WL 104403 (N.D. Ill. 1999); <u>In re Lake States Commodities</u>, 936 F. Supp. 1461, 1475 (N.D. Ill. 1996); <u>Pennsylvania Ass'n of Edwards Heirs v. Rightenour</u>, 235 F.3d 839, 843-44 (3d Cir. 2000); <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 656-57 (3d Cir. 1998); <u>Ling v. Deutsche Bank, AG</u>, 2005 U.S. Dist. LEXIS 9998, *11-12, 2005 WL 1244689 (S.D.N.Y. 2005); <u>Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison</u>, 955 F. Supp. 248, 256 (S.D.N.Y. 1997) ("Following the reasoning in <u>Central Bank</u>, this Court declines to create a private right of action for aiding and abetting a RICO violation. Nowhere in the text of Section 1962 is there any indication that Congress intended to impose aiding and abetting liability for a violation of the RICO statute."); <u>Dep't of Econ. Dev. v. Arthur Andersen & Co.</u>, 924 F. Supp. 449, 475-77 (S.D.N.Y. 1996); <u>Wuliger v. Liberty Bank, N.A.</u>, 2004 U.S. Dist. LEXIS 27353, 2004 WL 3377416 (N.D. Ohio 2004); <u>In re Mastercard Int'l Inc.</u>, 132 F. Supp. 2d 468, 494-95 (E.D. La. 2001) ("Thus, without further guidance from the higher court, this Court finds that aiding and abetting liability under §

1962(c) was eliminated by the Court's holding in Central Bank.").

The Seventh Circuit has not yet resolved whether aiding and abetting liability applies in a § 1962(c) RICO action. *See* Am. Automotive Accessories, Inc. v. Fishman, 175 F.3d 534, 543 (7th Cir. 1999). The majority of district courts in this circuit have responded in the negative. *See* Jubelirer, *supra*; Touhy, *supra*; Sorrano, *supra*; Lake States, *supra*. The one decision that approved the aiding and abetting liability for § 1962(c), is Am. Automotive, Accessories, Inc. v. Fishman, 1996 U.S. Dist. LEXIS 12207, 1996 WL 480369 (N.D. Ill. 1988). In Fishman, the court noted that § 1962(c) prohibits "directly or indirectly" participating in illegal activity, and concluded that "[t]he language of Section 1962(c), especially that forbidding 'indirect participation,' appears to permit aider and abettor liability."[6] *Id.* at *18. The court's analysis is thin and difficult to square with Central Bank, which expressly rejected the notion that the language "directly or indirectly" established aiding and abetting liability. Central Bank, 511 U.S. at 176. *See also* Touhy, 1999 U.S. Dist. LEXIS 7967, *9. The logic supporting the majority position is far more persuasive than that presented by Fishman. Under Central Bank, we turn to the language of § 1962(c) and find no evidence that Congress intended to permit aiding and abetting liability. *See* Lake States, 936 F. Supp. at 1475. This analysis should involve more than a hunt for the magic words "aiding and abetting," but all the signs point against implying a right of action here. Defendants motion to dismiss Count II is granted.

---

[6] As mentioned above, in Fishman the Seventh Circuit did not determine whether the lower court's position on aiding and abetting liability was correct. Instead, it held that, assuming aiding and abetting liability existed, the appellants' claim failed. Thus, the decision did not endorse the lower court's views on the issue.

## Section 1962(d) Claim

In Count I plaintiff claims that defendants violated § 1962(d) by conspiring to violate §§ 1962(a) and (c). Under § 1962(d) it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)" of § 1962. Defendants argue that plaintiff cannot state a § 1962(d) claim because her §§ 1962(a) and (c) claims fail. They are correct with respect to subsection (a), but not in regard to subsection (c). In Beck, the court held "that injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)." Beck, 529 U.S. at 505. As discussed above, plaintiff has adequately alleged that her demotion was caused by the extortionate scheme, and not by a subsequent overt act taken in furtherance of the racketeering conspiracy. Thus, defendant's motion to dismiss the § 1962(d) claim is granted as to the subsection (a) claim, but denied for the subsection (c) claim.

## First Amendment Claim

In the April 14, 2004, order, the court concluded that plaintiff stated a claim for retaliation based on speech. Plaintiff adequately connected her demotion to her refusal to sell and buy campaign fundraiser tickets, and that dispute amounted to a public concern. The court further noted that many of defendants' arguments implicated detailed factual questions that could not be resolved at the motion to dismiss stage. Defendants again seek to dismiss plaintiff's First Amendment claim, and contend that plaintiff's introduction of a class allegation in her amended complaint entitles them to attack plaintiff's claim. But defendants' arguments do not differ in any substantial measure from those that they previously raised, and the court's position on this matter has not changed. Defendants' motion to dismiss plaintiff's First Amendment claim is denied.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss plaintiff's § 1962(a) claim and Count II, denies the motion to dismiss plaintiff's § 1962(c) and First Amendment claims, and grants in part and denies in part the motion to dismiss the § 1962(d) claim.

JAMES B. MORAN
Senior Judge, U.S. District Court

June 30, 2005.